**Maria GUARDI, Alfredo Guardi, Plaintiffs,**

v.

**Paula F. DESAI, M.D., Defendant.**

**No. CIV. A. 00–6210.**

United States District Court,
E.D. Pennsylvania.

May 10, 2001.

Joanna Hamill Flum, Shrager, Spivey, Sachs & Weinstock, Philadelphia, PA, for plaintiffs.

Brian A. Murphy, Brian G. McConaty, Johnson McConaty & Sargent, Glendale, CO, Paul F. X. Gallagher, Gallagher, Rowan & Egbert, P.C., Philadelphia, PA, for defendant.

## MEMORANDUM

GILES, Chief Judge.

### I. Introduction

Maria and Alfredo Guardi bring this diversity action for negligence and bailment against Defendant Paula Desai, M.D., seeking compensatory and exemplary damages as well as interest, costs, and attorney's fees. Now before the court is a motion of Defendant to dismiss the complaint for lack of personal jurisdiction, pursuant to FED.R.CIV.P. 12(b)(2). For the reasons that follow, Defendant's motion to dismiss is denied.

## II. FACTUAL BACKGROUND

The material facts are not in contention. On June 9, 1997, Plaintiffs' counsel, Joanna Hamill Flum ("Ms.Flum") sent Defendant Paula Desai ("Dr.Desai") an unsolicited package to her home in Colorado containing (1) a letter asking Dr. Desai whether she would be willing to review certain materials in connection with Maria Guardi's ("Mrs.Guardi") potential medical negligence action in Pennsylvania; (2) a letter setting forth the facts of Mrs. Guardi's potential medical negligence action; and (3) the original mammogram films of Mrs. Guardi from September 21, 1990, September 20, 1991, October 27, 1992, and June 29, 1995. (Compl. ¶ 8; Pls.' Br. in Supp. of Resp. to Def.'s Mot. to Dismiss at 1–2.) The letter relating the basis for the potential medical negligence action stated, "I would ask that you please return these films to me [Ms. Flum] at the completion of your review, as they are the original films from the hospital and we have no other copies in our office." (Pls.' Br. in Supp. of Resp. to Def.'s Mot. to Dismiss, Ex. C.)

On August 26, 1997, Dr. Desai mailed to Ms. Flum her report, dated July 27, 1997, opining that the June 29, 1995 mammogram was improperly interpreted by Dr. Bernard Lewin ("Dr.Lewin"). (Compl. ¶ 9.) Dr. Desai sent a letter accompanying this report which included the following statement: "I hope that you will consider me for the evaluation of future cases for which you will need the assistance of a radiologist." (Pls.' Br. in Supp. of Resp. to Def.'s Mot. to Dismiss, Ex. D.) Ms. Flum's law partner did attempt to use Dr. Desai as an expert in a later case. (Id. at 2.)

After Plaintiffs received Dr. Desai's report, Ms. Flum contacted Dr. Desai to discuss the report in late August. 1997. (Id.) During this conversation, Ms. Flum requested that Dr. Desai keep the mammograms for a short period of time in case Plaintiffs needed an addendum to Dr. Desai's report. (Id.) Dr. Desai agreed to keep the mammogram films but apparently lost them. (Id.)

A medical negligence action was filed by Plaintiffs on March 5, 1998 in a Pennsylvania state court against various defendants including Dr. Lewin, alleging that Dr. Lewin failed to properly interpret the mammogram performed on June 29, 1995. (Compl. ¶ 5.) On December 8, 2000, the instant action was filed against Dr. Desai alleging that without the original mammogram films, Plaintiffs will be deprived of monetary damages that would have been obtained through a lawsuit because they are unable to prosecute their claim against Dr. Lewin. (Id. ¶ 10.)

## III. DISCUSSION

### A. Personal Jurisdiction

 Defendant moves to dismiss the complaint on the grounds that the court may not exercise personal jurisdiction over her. When a defendant raises the defense of the court's lack of personal jurisdiction, the plaintiff has the burden of bringing forward sufficient jurisdictional facts to establish with reasonable particularity that there were sufficient contacts between the defendant and the forum to make jurisdiction proper. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). For purposes of this motion, the court must accept as true the plaintiff's version of the facts, and draw all inferences from the pleadings, affidavits, and exhibits in plaintiff's favor. *See DiMark Mktg., Inc. v. Louisiana Health Serv. & Indem. Co.*, 913 F.Supp. 402, 405 (E.D.Pa.1996). The third circuit has repeatedly held that courts should take a "highly realistic" view when deciding whether to assert personal jurisdiction over a non-resident defendant. *Farino*, 960 F.2d at 1224. Courts should take into account "the relationship among the forum, the defendant and the litigation ..." *Id.*

 There is a two-part test to determine if personal jurisdiction exists over an out-of-state defendant. First, the court must determine whether the long-arm statute of the forum state would allow courts of that state to exercise jurisdiction over the defendant. FED.R.CIV.P. 4(e). Second, if the forum state would allow jurisdiction, then the court must determine if exercising personal jurisdiction comports with the due process clause of the U.S. Constitution. *See IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.1998). Since the Pennsylvania long-arm statute, 42 Pa. C.S.A. § 5322(b), permits Pennsylvania courts to exercise personal jurisdiction to the constitutional limits, the jurisdictional inquiry turns on whether the exercise of personal jurisdiction complies with constitutional due process.[1] *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir.1996); *Farino*, 960 F.2d at 1221.

 There are two distinct bases upon which personal jurisdiction can be premised—general jurisdiction and specific jurisdiction. General jurisdiction exists when, regardless of where the particular events giving rise to the litigation occurred, the non-resident defendant has continuous and systematic contacts with the forum state. *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987)(citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In contrast, specific jurisdiction exists when there are

---

1. Pennsylvania's long-arm statute, 42 PA. CONS. STAT. § 5322, states in relevant part:

 (a) A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person:
 (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.
 (b) Exercise of full constitutional power over non-residents. In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contacts with this Commonwealth allowed under the Constitution of the United States.

 Defendant does not deny that a court could exercise personal jurisdiction over her pursuant to these provisions of Pennsylvania's long-arm statute, but instead focuses on the constitutionality of exercising personal jurisdiction.

no continuous and systematic contacts, but a controversy is related to or "arises out of" a defendant's contacts with the forum. *See Helicopteros,* 466 U.S. at 414 & n. 8, 104 S.Ct. 1868. Both parties agree that only specific jurisdiction is possibly relevant so the court will dispense with a discussion of general jurisdiction.

■ There is a two-part test for a court to apply in determining whether the court can exercise specific jurisdiction. First, a plaintiff must demonstrate that the defendant has sufficient "minimum contacts" with Pennsylvania. *See IMO,* 155 F.3d at 259 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). A defendant establishes minimum contacts with the forum state through affirmative acts directed at residents of the forum; there must be some act by which the defendant purposefully avails him or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174. Minimum contacts are established where "defendant's conduct and connection are such that [defendants] should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. Second, if minimum contacts exist, the court must determine if exercising jurisdiction over the defendant would comport with "traditional notions of fair play and substantial justice." *Vetrotex,* 75 F.3d at 150–51 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1954)).

### 1. Minimum Contacts Analysis

The contacts between the Defendant and Plaintiffs and Defendant and Pennsylvania in terms of this cause of action are as follows: (1) Ms. Flum sending letters and a package with the films to Dr. Desai requesting her review for a potential medical negligence action in Pennsylvania, (2) Dr. Desai mailing a report to Ms. Flum opining that the June 29, 1995 mammogram was misinterpreted and offering her services in future matters, (3) Ms. Flum calling Dr. Desai to discuss the report and asking the doctor to retain the films for a potential future addendum, (4) Dr. Desai agreeing to keep the films in case a further report was necessary, and (5) Dr. Desai informing Ms. Flum that she had lost the films.

Plaintiffs argue that Dr. Desai should have reasonably expected that she could be sued in Pennsylvania. Dr. Desai (1) was willing to render her services to the Guardis in connection with litigation in Pennsylvania, (2) knew that the litigation was either contemplated or pending in Pennsylvania based on the alleged misinterpretation of the mammogram films by Dr. Lewin, (3) knew the Guardi mammograms were needed in Pennsylvania to prosecute the litigation, (5) could foresee that the loss of the mammograms in Colorado would cause harm to the Plaintiffs in Pennsylvania and (6) purposely availed herself of the opportunity of conducting an activity with consequences in Pennsylvania by accepting review of the Guardi case and by actively soliciting from Pennsylvania other cases for review. (Pls.' Br. in Supp. of Resp. to Def.'s Mot. to Dismiss at 16–17.)

Dr. Desai argues that there is no reason that she would expect to be sued in Pennsylvania. (Mot. to Dismiss at 4.) Dr. Desai was a resident of Colorado during the entire matter in question. (*Id.*) She is not licensed to practice medicine in Pennsylvania and has never advertised her services as a potential expert witness in Pennsylvania. (*Id.*) Dr. Desai did not solicit the opportunity from either Plaintiffs or Plaintiffs' counsel to author the

report or to review the films that are the basis of the cause of action. (*Id.*)

■ The court finds that Plaintiffs have established that Defendant has sufficient minimum contacts with Pennsylvania to exercise personal jurisdiction.[2] Defendant's contacts with Pennsylvania, while few in number, still created a substantial connection with Pennsylvania. As *Burger King*, states:

> Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State. Thus where the defendant ... has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there ... 471 U.S. at 475–76, 105 S.Ct. 2174.

Even though the Guardis initiated the first contact with Dr. Desai, Dr. Desai, (1) by reviewing the films and writing a report for the Guardis in their potential medical malpractice action; (2) by requesting future opportunities from Plaintiffs' counsel to write expert reports; and (3) by agreeing to retain the mammogram films to write an addendum for the Guardis, "reach[ed] out beyond one state and creat[ed] continuing relationships and obligations with citizens of another state." *Farino*. 960 F.2d at 1222 (quoting *Burger King*, 471 U.S. at 473–74, 105 S.Ct. 2174).

Defendant should reasonably have anticipated being haled into court in Pennsylvania since she purposefully availed herself of the privilege of doing business in Pennsylvania. *See Farino*, 960 F.2d at 1221. Defendant participated in an on-going business relationship with Plaintiffs to provide a report that would influence Plaintiffs' litigation in Pennsylvania. Dr. Desai held herself out as an expert willing to opine that the 1995 report was misread when she agreed to retain the mammogram films in case an addendum to her report was necessary. Plaintiffs believed that Defendant would be paid for her review of the films and her report as well as for any other professional services that she rendered. Plaintiffs' counsel believed, based on her contacts with Dr. Desai, that her relationship with Dr. Desai would be governed by the standard practices between an expert witness and counsel and acted accordingly. (Pls.' Br. in Supp. of Resp. to Def.'s Mot. to Dismiss, Ex. A. Ms. Flum's Affidavit at 3.) Ms. Flum stated that it is customary for experts to submit bills for review of medical films and services connected with such review and Ms. Flum expected to receive such a bill and compensate Dr. Desai upon receipt of the bill. (*Id.* at 4.)

By her conduct in at least ostensibly serving as the Guardis' expert in the potential malpractice case, Dr. Desai created a continuing obligation between herself and the Guardis. Dr. Desai knew from her contacts with Plaintiffs that they were relying on her report and the original mammogram films in her possession for their litigation in Pennsylvania. Plaintiffs believed that they were under an obligation to compensate Dr. Desai for her work on their case.

Further, Plaintiffs have submitted evidence that Defendant deliberately engaged in a course of conduct designed to cultivate this on-going relationship. *Rotando Wei-*

---

**2.** Defendant's papers concentrate on the quantity of contacts between Defendant and Pennsylvania, but this court finds that the determination of in personam jurisdiction turns on the quality of the contacts. As dis-

cussed *supra*, courts should take into account "the relationship among the forum, the defendant and the litigation ..." *Farino*, 960 F.2d at 1224.

*rich Enter. Inc. v. Global Employment Solutions,* No.CIV.A.99–3661, 1999 WL 1077078, at *4 (E.D.Pa. Nov.22, 1999.) In her cover letter accompanying the report for Mrs. Guardi, Dr. Desai requested that Plaintiffs' counsel consider her for the evaluation of future cases for which counsel might need an expert radiologist. In addition, Dr. Desai agreed to retain the mammogram films in case an addendum to her report was necessary.

Finally, Dr. Desai should have expected that her activities involving the mammogram films could cause her to be haled into court in Pennsylvania. That harm in Pennsylvania would occur if anything were to happen to the original mammogram films, particularly the one that Dr. Desai determined was misinterpreted, was foreseeable. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65–66 (3d Cir.1984) (In determining whether a Pennsylvania court can exercise in personam jurisdiction, "[w]hat is required … is actual evidence that, by entering into the contract, the particular defendant could foresee impact within Pennsylvania.") Defendants relied on Dr. Desai to safeguard the films and to render a further opinion to influence Plaintiffs' litigation in Pennsylvania and Dr. Desai knew that the Plaintiffs were relying on her to safeguard the films and to provide a further report if necessary. Dr. Desai could foresee that loss of the mammogram films would cause negative impact in Pennsylvania.

**2. The Assertion of Personal Jurisdiction Comports With Fair Play and Substantial Justice**

 The court now considers whether exercise of jurisdiction over Dr. Desai comports with notions of fair play and substantial justice. Once a plaintiff has made out a prima facie case of minimum contacts, a defendant bears a heavy bur-

den to show an absence of fairness or justice since the defendant must present a compelling case that the presence of other considerations would render jurisdiction unreasonable. *Carteret Sav. Bank,* 954 F.2d at 150. In this part of the analysis, a court may examine factors, often called "fairness factors," from *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1908). These factors include:

(1) the burden on the defendant;

(2) the forum State's interest in adjudicating the dispute;

(3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and

(5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

Once plaintiff establishes that minimum contacts exist, as Plaintiffs did in this case, a defendant bears the burden of showing that exercise of jurisdiction is unreasonable. *See Farino,* 960 F.2d at 1227. The Defendant in this case has limited her argument to whether she has sufficient minimum contacts with Pennsylvania to support personal jurisdiction and has not provided any evidence that jurisdiction would be unfair or improper. The third circuit has stated that even though application of the "fair play and substantial justice prong" is technically discretionary, the third circuit favors its application and has even referred to it as mandatory. *See Pennzoil Products Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 201 (3d Cir.1998.) Thus, the court undertakes this analysis even though the Defendant has not really addressed this prong of the analysis.

 The court notes that none of the factors outlined above leads to the conclu-

sion that exercising jurisdiction in this case would be unreasonable. While Defendant does have the burden of coming to Pennsylvania from Colorado, given her actions impacting on Pennsylvania residents, it is not unfair to require that she conduct her defense in Pennsylvania. Pennsylvania does have an interest in adjudicating this dispute since Dr. Desai's contacts with Plaintiffs and Pennsylvania was neither "fortuitous" nor "the result of a single transaction." *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295 (3d Cir.1985.) Finally, there does not seem to be any efficiency or social policy argument against exercising jurisdiction.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss pursuant to FED.R.CIV.P. 12(b)(2) is denied. An appropriate order follows.

### ORDER

AND NOW, this 10th day of May, 2001, for the reasons stated in the accompanying memorandum, Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(2), Docket #3, is DENIED.