Carmen **ECHEVARRÍA**,
et al., Plaintiffs

v.

Richard L. **BECK**, MD,
et al., Defendants.

**Civil No. 03–2096 (JAG).**

United States District Court,
D. Puerto Rico.

Sept. 23, 2004.

Jose R. Cintron–Colon, Santurce, PR, for Plaintiffs.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On October 9, 2003, Carmen Echevarría ("Echevarría"), Luis Morell Morell ("Morell"), and Manuel Martínez Umpierre ("Martínez") filed an action for damages citing breach of contract by defendants Richard L. Beck ("Beck"), and Health Care Auditors, Inc ("HCA"). (Docket No. 1). On February 17, 2004, defendant Beck filed a motion to dismiss based on lack of in personam jurisdiction (Docket No. 8). On February 17, 2004, defendant HCA filed a motion to dismiss for failure to state

a claim upon which relief may be granted (Docket No. 9).

For the reasons discussed below, the Court **DENIES** defendant Beck's motion to dismiss (Docket No. 8) and **DENIES** defendant HCA motion to dismiss (Docket No. 9).

## FACTUAL BACKGROUND[1]

On or about September 20, 2000, plaintiffs contacted Health Care Auditors, Inc., to retain a medical expert witness to testify on behalf of Carmen Echevarría in a medical malpractice case before the Mayagüez Superior Court. Writing on behalf of his client, attorney Manuel Martínez Umpierre stated in his letter that "if the case goes to trial, I will need a surgeon willing to come to Puerto Rico" (Docket No. 1 at 2). HCA agreed to supply a medical expert, and, on January 23, 2001, received a payment of $2500 from plaintiffs to secure HCA's services. On or about February 12, 2001, HCA confirmed that Doctor Richard Beck would serve as medical expert for the plaintiffs.

Beck's expert witness report was delivered to the plaintiffs on or about May 11, 2001. In September of that year, plaintiffs contacted Beck to schedule his deposition. The deposition initially scheduled for May 18, 2002, was cancelled at Beck's request with 12 days notice. Attempts to reschedule the deposition were unsuccessful.

On February 5, 2003, plaintiffs notified Beck that the malpractice case had been set for trial on April 28, 2003. On February 10, 2003, Beck informed plaintiffs that he was "not available to provide any deposition outside the United States" (Docket No. 1 at 3). Plaintiffs, unable to secure a replacement medical expert so late in the legal process, were forced to voluntarily dismiss Echevarría's malpractice claim.

1. The facts are taken from the complaint

## DISCUSSION

### A. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### B. Defendant Beck's Motion to Dismiss

Beck alleges that he does not have minimum contacts with Puerto Rico that would permit him to be sued in this Court.

In cases of diversity of citizenship, the determination of personal jurisdiction is governed by the state long-arm statute.

(Docket No. 1).

See *Pizarro v. Hoteles Concorde Int'l*, 907 F.2d 1256, 1258 (1st Cir.1990); *Rubi v. Sladewski*, 641 F.Supp. 536, 537 (D.P.R. 1986). The Commonwealth's long-arm statute provides for personal jurisdiction over a person not domiciled in Puerto Rico "if the action or claim arises because said person transacted business in Puerto Rico personally or through an agent." P.R.R.Civ.P. 4.7(a)(1). The statute permits the extension of jurisdiction in personam as far as the federal Constitution allows. *See Mangual v. Gen'l Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983); *Swank, Inc. v. Carmona*, 603 F.Supp. 1092, 1096 (D.P.R. 1985). Therefore, this Court will focus on whether the Fourteenth Amendment allows this Court to exercise in personam jurisdiction.

"The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum state." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). To establish minimum contacts for the purposes of specific in personam jurisdiction, a plaintiff must satisfy a three part test. *See Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir.1994). First, the plaintiff must demonstrate that the cause of action "arises out of, or relates to" the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Second, the plaintiff must show that the defendant purposefully availed himself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d

1283 (1958). Finally, personal jurisdiction over the defendant must be consistent with notions of "fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The first prong, or relatedness test, requires that the cause of action "arise out of or relate to" defendant's contacts with the forum state. "In a contract claim, as is the case at bar, the court should analyze the elements of the cause of action and determine 'whether the defendant's contacts with the forum were instrumental in the formation of the contract or in its breach.'" *Rodriguez v. Dixie S. Indus., Inc.*, 113 F.Supp.2d 242, 251 (Dist.P.R., 2000). In this case, Beck was contacted by a Florida corporation, HCA, to provide an expert opinion for a client who was a resident of Puerto Rico. Subsequently, Beck was appointed as the expert who would be providing an opinion in the case. Beck's expert report was sent to plaintiffs in Puerto Rico, and there was direct contact by mail between Beck and attorney Umpierre with respect to the first scheduling of the deposition in this matter, which was later cancelled at Beck's request. It has been established that "The sending of information into the forum state via telephone or mail constitutes evidence of jurisdictional contact directed into the forum." *Rodriguez v. Dixie S. Indus., Inc.*, 113 F.Supp.2d 242, 251 (D.P.R., 2000). Given the facts in the present case, this Court is satisfied that the first prong has been met.

■ The second prong of the analysis Beck's purposeful availment of the privilege of conducting activities within Puerto Rico poses a more difficult question. Although HCA regularly solicits business in Puerto Rico,[2] no evidence has been pre-

---

2. For example, HCA advertises its services in various state bar newsletters, emphasizing

"[o]ver 15,000 cases for 5,000 (+) law firms completed throughout the U.S. and Puerto

sented[3] to suggest that Beck has actively sought contracts on the island.

> This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper ... where the contacts proximately result from acts of the defendant himself that create a substantial connection with the forum state.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Beck's only contacts with the forum state were (1) his acceptance of the Puerto Rico case proffered to him by HCA (Docket No. 13, Exh. C);(2) Beck's preparation of a report for use in Echevarría's malpractice suit (Docket No. 1 at 3); and (3) Beck's correspondence with the plaintiffs concerning the deposition he failed to provide (Docket No. 13, Exhs. D, E, G). Although Beck was aware that the client for whom he was preparing the expert report was in Puerto Rico, plaintiffs have made only a marginal showing that Beck availed himself of the opportunity to act in Puerto Rico. In terms of defendant's voluntariness, it is clear that Beck did not initiate contact in this case. However, it is equally clear from the particular facts in this case that defendant Beck knew that his expert opinion was to be utilized in Puerto Rico, and that the contract had a substantial connection to Puerto Rico. It was thus foreseeable that a cause of action could arise. The particular facts of this case, therefore, do not compel an unequiv-ocal result when considering the second prong of the jurisdictional analysis.

■ An examination of the third prong of the analysis, the so-called "gestalt factors", may be useful in tipping the constitutional balance in favor of or against a finding of *in personam* jurisdiction. *See Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 209–212 (1st Cir.1994). These five gestalt factors can be summarized as follows: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies. *Id.* at 209 (citing *Burger King,* 471 U.S. 462 at 477, 105 S.Ct. 2174, 85 L.Ed.2d 528).[4] The first factor, defendant's burden to appear, requires that burden to be "onerous in a special, unusual or other constitutionally significant way". *Rodriguez* at 253 (citing *Pritzker v. Yari,* 42 F.3d 53, 64 (1st Cir. 1994)). There has been no showing by defendant that there are special circumstances that would demonstrate a constitutionally significant burden on him to appear in Puerto Rico. Therefore, this factor tips in favor of jurisdiction.

■ The second factor addresses the forum's interest in adjudicating the controversy. In this case, the breach of contract had a negative impact on plaintiffs, who reside in Puerto Rico. Because the harm occurred in Puerto Rico, Puerto Rico has

---

Rico." http://www.michbar.org/publications/intnetads.cfm.

**3.** The plaintiff carries the burden of establishing that the forum court has in personam jurisdiction over the defendant. *Alers Rodríguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997).

**4.** Because these cases have discussed each one of these factors at length, this Court does not deem it necessary to repeat the discussion and will instead focus on their application in the case at hand.

an interest in exercising jurisdiction over Beck.

■ The third factor is the plaintiffs' interest in obtaining effective and convenient relief, and their choice of forum should be afforded a large degree of deference. *Rodriguez* at 254. Clearly plaintiffs chose to litigate here because it is more convenient for them to do so: therefore, this factor also tips in favor of jurisdiction.

■ The fourth factor is the judicial system's interest in obtaining the most efficient resolution. To this end, it is important to note that there is a second defendant in this matter, HCA, who has not contested jurisdiction. If this Court chooses not to exercise jurisdiction over Beck, this case would either have to be litigated in separate forums or plaintiffs would be forced to litigate in a different jurisdiction. Therefore, this Court believes that the most efficient resolution of this matter requires it to exercise jurisdiction over Beck.

Finally, the fifth factor weighs the common interests of all sovereigns in promoting substantive social policies. It has been established that a prominent policy consideration is the state's ability to provide a convenient forum to redress injuries caused by foreign actors. *Rodriguez* at 254 (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir.1995)). Thus, the fifth gestalt factor also weighs in favor of this Court's exercise of jurisdiction over Beck. Because all five factors weigh in favor of plaintiffs, this Court's inquiry into the third prong of the jurisdictional analysis clearly tips the balance in favor of a finding of jurisdiction.

The facts before this Court demonstrate that Beck had minimum contacts with this forum that are sufficient to allow this Court to exercise jurisdiction over him. Beck was aware that he was rendering an expert opinion for a case in Puerto Rico, and that he would need to travel to Puerto Rico at least for a deposition and perhaps a trial. He received economic benefit from his contact, and could reasonably foresee that a cause of action could arise from said contact. This Court believes that plaintiffs have met the required *prima facie* burden to establish specific *in personam* jurisdiction over Beck.

## C. Defendant HCA's Motion to Dismiss

■ HCA alleges that plaintiffs have failed to state a claim against it because they have not established that there was consent-and therefore an obligation on the part of HCA to provide an expert witness that would be willing to travel to Puerto Rico. This Court, however, disagrees. It is clear from the complaint that prior to hiring the services of HCA, attorney Manuel Martínez Umpierre stated in a letter to HCA that "if the case goes to trial, I will need a surgeon willing to come to Puerto Rico" (Docket No. 1 at 2). HCA agreed to supply a medical expert, and, on January 23, 2001, received a payment of $2500 from plaintiffs to secure HCA's services. This Court believes that plaintiffs have successfully established sufficient factual allegations concerning the material elements necessary to sustain recovery under their theory of breach of contract. Therefore, HCA's motion to dismiss must be denied.

## CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** defendant Beck's motion to dismiss for lack of in personam jurisdiction (Docket No. 8) and **DENIES** defendants HCA's motion to dismiss for failure to state a claim (Docket No. 9).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of September, 2004.