## IN THE COURT OF APPEALS OF IOWA

No. 21-1666
Filed December 21, 2022

**MARC HARDING d/b/a HARDING LAW FIRM,**
    Plaintiff-Appellee,

**vs.**

**RICK SASSO, M.D., d/b/a INDIANA SPINE GROUP,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

A physician from Indiana challenges an interlocutory ruling that he is subject to personal jurisdiction in an Iowa lawsuit. **REVERSED AND REMANDED.**

Brent Ruther of Aspelmeier, Fisch, Power, Engberg & Helling, PLC, Burlington, for appellant.

Jeffrey M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellee.

Considered by Bower, C.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**TABOR, Judge.**

Dr. Rick Sasso, an orthopedic surgeon from Indiana,[1] challenges the denial of his motion to dismiss a lawsuit filed by Des Moines lawyer Marc Harding. Dr. Sasso contends the Iowa court was wrong in finding it had personal jurisdiction over Harding's claim that Dr. Sasso should refund "part or all" of a $10,000 retainer that Harding paid for expert consultation on a potential medical malpractice action. Because Dr. Sasso's "preliminary evaluation" of Harding's case did not create the Iowa contacts that would support jurisdiction, we reverse and remand for a ruling dismissing the action for a lack of personal jurisdiction.

## I.    Facts and Prior Proceedings

We garner these facts from Harding's petitions and the parties' competing affidavits.  The parties agree that attorney Harding called Dr. Sasso in February 2021 to solicit his expertise in reviewing the medical records of a patient who suffered an injury to his esophagus during cervical spine surgery in Iowa.[2]  The parties also agree that after their conversation, Harding forwarded Dr. Sasso an electronic link to the patient's medical chart, as well as a check for $10,000.  The parties did not have a written contract.  And they agree that after his records review, in early March 2021, Dr. Sasso reported to Harding that he found "no case" for malpractice.  After receiving that report, Harding declined to sue the Iowa medical providers for breaching the standard of care.

---

[1] Dr. Sasso is president of Indiana Spine Group, P.C., also named in this suit.
[2] Harding had already shown the patient's records to a Florida doctor for an initial consultation.  That doctor sent a one-page email recommending the case be pursued, but did so based on a misreading of the delay between the surgery that resulted in a tear in the patient's esophagus and the surgery to repair it.

But Harding and Sasso disagree on critical details of the consultation. For example, they offer divergent views of what the $10,000 retainer covered. In his affidavit, Harding asserted that Dr. Sasso "averred that he could serve as an expert at trial" and would charge $1000 per hour "for his record review and trial testimony." Harding added that Dr. Sasso never said the $10,000 was non-refundable. By contrast, Dr. Sasso characterized the $10,000 as a "flat fee" for his review of the records and resulting opinion whether the Iowa medical providers breached the standard of care. The doctor averred that Harding did not explain any plans for litigation with him, nor did he commit to providing testimony in any case that Harding "might file in the future."

The parties also disagree on the volume of the records. In Dr. Sasso's view, "[t]he medical chart was extensive." Included were records of the initial surgery, subsequent physical therapy treatments, the entire chart from the consulting ENT surgeon, and the further surgery. Dr. Sasso recalled: "Also provided were imaging studies which take substantial time to fully review." In all, Dr. Sasso estimated that he spent twelve hours reviewing the records at his Indiana office.

Harding questioned the doctor's time commitment. The attorney asserted the medical records totaled 166 pages. And he pointed out that the malpractice alleged by the initial reviewer was a delay between the first and second surgeries. According to Harding, in less than forty pages, Dr. Sasso could have determined that the initial reviewer had looked at the wrong date for the second surgery. Harding criticized Dr. Sasso for reviewing all the information provided. Dr. Sasso stated, "It was important to me to review all the records provided because I believe that is essential for quality expert consultant work."

Dr. Sasso recounted that Harding "was not happy with the opinion I had reached after completing the review I committed to make of the medical information provided." When Dr. Sasso refused to refund any of the retainer, Harding asked him to provide time records or notes of his review. But the doctor replied that he kept neither, allegedly out of concern such information would be "discoverable." Harding denied discussing whether the doctor should avoid keeping records "out of fear of discovery." Finally, Harding recalled that when he "expressed disdain that Dr. Sasso was charging $10,000 to tell him something that could have been discovered for far less, Dr. Sasso told Harding that he could have told him there was no case for $500."

Less than two months after his second conversation with Dr. Sasso, Harding sued in Iowa for a full or partial refund of the retainer, plus ten-percent statutory interests on their contract.[3] In response, Dr. Sasso moved to dismiss for lack of personal jurisdiction. The district court denied that motion. And Dr. Sasso successfully sought interlocutory appeal. After the parties completed their briefing, the supreme court transferred the appeal to our court.

## II. Scope and Standard of Review

We review the district court's denial of Dr. Sasso's motion to dismiss for legal error. *See Sioux Pharm, Inc. v. Summit Nutritionals Int'l, Inc.*, 859 N.W.2d 182, 188 (Iowa 2015). Unlike other grounds for dismissal, a court considering a motion to dismiss for lack of personal jurisdiction must make factual findings to determine whether it has personal jurisdiction over the defendant. *Shams v.*

---

[3] Harding later amended the petition, alleging breach of contract, breach of fiduciary duty, conversion, and fraud.

*Hassan*, 829 N.W.2d 848, 853 (Iowa 2013). The court's legal conclusions and application of legal principles do not bind us. *Id.* But, if supported by substantial evidence, those factual findings do. *Id.*

When considering a motion to dismiss for lack of personal jurisdiction, the court accepts as true the petition's allegations, as well as the content of any uncontroverted affidavits. *See Addison Ins. Co. v. Knight, Hoppe, Kurnik & Knight, L.L.C.*, 734 N.W.2d 473, 476 (Iowa 2007) (quoting *Aquadrill, Inc. v. Env'tal Compliance Consulting Servs., Inc.*, 558 N.W.2d 391, 392 (Iowa 1997)). As plaintiff, Harding must make a prima facie case showing that personal jurisdiction is appropriate. *See id.* Then the burden shifts to Dr. Sasso to rebut that showing. *See id.*

Jurisdictional issues may overlap with the merits of the parties' claims. If genuine issues of material fact exist concerning controverted allegations going to the merits, the district court should not resolve those issues in deciding the jurisdictional challenge, even if jurisdiction depends on those facts. *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 7 (Iowa 2005). The court should wait to determine those issues at trial. *Id.*

## III.    Lack of Factual Findings

As Harding concedes on appeal, the district court did not set out its factual findings as required when determining personal jurisdiction. Instead, the court cited *Addison* for the principle that it was bound by the facts alleged in Harding's petition. Because Dr. Sasso did not seek to amend or enlarge that ruling, Harding argues that we must presume the district court "decided the facts necessary to

support its decision" in his favor. *Bankers Tr. Co. v. Fidata Tr. Co. New York*, 452 N.W.2d 411, 413 (Iowa 1990).

As Dr. Sasso offers no response to this argument in his reply brief, we follow *Bankers Trust*. Because its findings have the force and effect of a jury verdict, we must assume the court accepted Harding's claim that Dr. Sasso agreed "to both evaluate a potential malpractice claim and to testify as an expert in any ensuing litigation." *See id.* at 414. That decided, we ask: do the facts presented, viewed in a light most favorable to Harding, support the court's conclusion that because of that agreement Dr. Sasso had submitted to jurisdiction in Iowa? *See id.*

## IV. Analysis

Dr. Sasso contests the district court's finding of personal jurisdiction. He claims his "preliminary evaluation" of Harding's case—conducted from his clinic in Indiana—did not create the Iowa contacts that would support jurisdiction. He claims the court failed to follow the analysis in *Walden v. Fiore*, 571 U.S. 277 (2014). That case held that a Nevada court could not exercise personal jurisdiction over a Georgia police officer when none of the officer's allegedly tortious conduct occurred in the forum state. 571 U.S. at 280. *Walden* reasoned that, "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 277.

The doctor's claim is constitutional at its core. The Fourteenth Amendment's Due Process Clause limits the power of state courts to exercise jurisdiction over an out-of-state defendant. "The canonical decision in this area

remains *International Shoe Co. v. Washington*, 326 U.S. 310 . . . (1945)." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). It held that a tribunal's jurisdiction hinges on the defendant having "certain minimum contacts" with the forum state so that maintaining the lawsuit there does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Dr. Sasso's challenge focuses on those "minimum contacts" necessary to create specific jurisdiction.[4]

Our analysis is also informed by Iowa Rule of Civil Procedure 1.306. It defines the reach of Iowa courts' jurisdiction:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 1.306. "This rule authorizes the widest jurisdictional parameters allowed by the Due Process Clause." *Cap. Promotions, L.L.C. v. Don King Prods., Inc.*, 756 N.W.2d 828, 833 (Iowa 2008).

In analyzing minimum contacts, our supreme court has shifted from a five-factor test[5] to a two-part inquiry. Now, to find the contacts necessary for specific

---

[4] Specific jurisdiction (also called "case-linked" jurisdiction) requires defendants to "purposefully avail" themselves of the privilege to conduct activities in the forum state. *Ford Motor Company*, 141 S. Ct. at 1024. That requirement differs from general jurisdiction (also called "all purpose" jurisdiction) which permits a tribunal to proceed based on a forum connection unrelated to the underlying suit (such as defendant's domicile). *Id.* Harding asserts only specific jurisdiction.

[5] Those still-relevant factors include: (1) the quantity of the defendant's contacts with the forum state, (2) the nature and quality of those contacts, (3) the source of those contacts and their connection to the cause of action, (4) the interest of the

jurisdiction, a plaintiff must show: (1) the defendants have "purposefully directed" their activities at residents of the forum state and (2) the litigation results from alleged injuries that "arise out of or relate to" those activities. *Book v. Doublestar Dongfeng Tyre Co., Ltd.*, 860 N.W.2d 576, 584 (Iowa 2015) (citations omitted).

"If sufficient minimum contacts exist, the court must then determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Sioux Pharm*, 859 N.W.2d at 196. That determination also relies on several considerations, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Cap. Promotions*, 756 N.W.2d at 834 (internal quotations and citations omitted).

### A. Did Sasso purposefully direct his activities at Iowa residents?

The district court decided that Sasso's agreement to provide expert services for Harding's potential malpractice case supplied the connection needed for personal jurisdiction. Of course, by itself, a contract between an Iowa plaintiff and an out-of-state defendant does not establish sufficient minimum contacts to permit Iowa courts to exercise specific personal jurisdiction. *See Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 892 (Iowa 2014). Rather, a court must look to the terms of the contract, the parties' actual course of dealings, as well as their prior negotiations and contemplated future consequences. *Id.*

---

forum state, and (5) the convenience of the parties. *Cap. Promotions*, 756 N.W.2d at 833.

Without a written contract, we are left with Harding's bare-bones description of the terms of his agreement with Dr. Sasso. In short, the petition alleged that Harding agreed to advance $10,000 to Dr. Sasso in exchange for his expertise in evaluating "a potential malpractice claim." Critical to the jurisdictional question, the petition also alleged that Dr. Sasso "agreed to testify as an expert in any ensuing litigation." The district court focused on that second term in denying Dr. Sasso's motion to dismiss. In concluding that the expert's contract to provide services in Iowa was a sufficient contact to establish personal jurisdiction, the court relied on three federal district court opinions: *Golden v. Stein*, 481 F. Supp. 3d 843 (S.D. Iowa 2019); *Echevarria v. Beck*, 338 F. Supp. 2d 258, 262 (D.P.R. 2004); and *Guardi v. Desai*, 151 F. Supp. 2d 555, 560 (E.D. Pa. 2001).

Like Dr. Sasso, we find important differences between his situation and those three cases. We start with *Golden*, where an attorney being sued for malpractice brought a third-party action against an accounting firm hired to provide expert witness opinions in an underlying copyright infringement action brought in Iowa. 481 F. Supp. 3d at 846. The firm claimed it was not subject to personal jurisdiction because it had insufficient minimum contacts with the state of Iowa. *Id.* at 848. The federal district court disagreed, finding the firm purposefully availed itself of "the privilege of conducting expert witness activities in this forum to earn expert witness fees, thus invoking the benefits and protections of this forum's laws." *Id.* at 860. The court noted those contacts were not "random, fortuitous, or attenuated," because the firm—which was designated as an expert in the copyright case—anticipated that it would have "a relationship with the litigation in the forum for as long as that litigation lasted" and could be called on to testify in this forum.

*Id.* As the court explained, members of the firm were "aware of the possibility of testifying in this forum" as evidenced by provisions in its expert witness agreement for testimony and travel fees. *Id.* Assessing personal jurisdiction to be a "close" question, the federal district court decided the firm had sufficient contacts because it could reasonably anticipate being haled into the Southern District of Iowa over its performance of that agreement. *Id.* at 862.

By contrast, Dr. Sasso did not have a relationship with ongoing litigation in Iowa. His agreement with Harding contemplated two steps. First, evaluate a potential malpractice claim. Second, provide testimony in any ensuing litigation. So any commitment by Dr. Sasso to testify in an Iowa court was contingent on a positive evaluation of the potential malpractice claim. Indeed, when Dr. Sasso's records review revealed no breach of the standard of care by the Iowa medical providers, no litigation ensued. Thus his contacts with Iowa were much more attenuated than the experts in *Golden*. Before Dr. Sasso completed his preliminary evaluation, neither he nor Harding knew whether an action would be filed, much less whether Dr. Sasso would be called as an expert witness. On this factual record, we cannot find that Dr. Sasso deliberately engaged in significant activities within Iowa. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

The district court's other two authorities, *Beck* and *Guardi*, can be distinguished for similar reasons. In *Beck*, a surgeon was appointed to serve as an expert in a pending medical malpractice case in Puerto Rico, received a fee, and provided an expert witness report. 338 F. Supp. 2d at 260. When the surgeon backed out of giving a deposition, the plaintiffs were unable to find a replacement expert and were forced to voluntarily dismiss their claims. *Id.* In a later breach-of-

contract claim, the federal district court rejected Beck's personal-jurisdiction challenge, finding he knew "that he was rendering an expert opinion for a case in Puerto Rico, and that he would need to travel to Puerto Rico at least for a deposition and perhaps a trial." *Id.* at 263. Again by contrast, Harding did not retain Dr. Sasso to provide expert services in an existing case. Unless his preliminary evaluation showed a promising malpractice claim, Dr. Sasso had no reasonable expectation that he would have to testify in Iowa.

*Guardi* is strike three. There, a Pennsylvania plaintiff sued a Colorado radiologist in Pennsylvania federal court. 151 F. Supp. 2d at 557. The radiologist had been plaintiff's expert in her Pennsylvania medical negligence action. *Id.* In the second action, the plaintiff alleged that the expert lost her mammogram films and, without those films, she could not prosecute her underlying lawsuit. *Id.* The Pennsylvania court decided the expert should reasonably have anticipated being haled into court in Pennsylvania because she reviewed the films and wrote a report for Guardi's malpractice action, requested future opportunities from plaintiffs' counsel to write expert reports, and agreed to retain the mammogram films to write an addendum for Guardi. *Id.* at 560. Unlike the expert in *Guardi*, Dr. Sasso did not cultivate an ongoing relationship with Harding.

Having found those federal district court decisions off target, we jump to *Walden*, the Supreme Court case touted by Dr. Sasso. In that case, airline passengers sued a drug-enforcement agent, Walden, alleging he violated their rights by seizing their cash in Georgia during their return trip to Nevada. *Walden*, 571 U.S. at 281. The Supreme Court noted that Walden's relevant conduct occurred in Georgia and held "the mere fact that his conduct affected plaintiffs with

connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291. *Walden* emphasized "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* Applied here, *Walden* requires that Dr. Sasso's relationship with the forum state must arise from contacts he initiated or pursued—not those created through attorney Harding or the plaintiff or defendants in the potential malpractice action.

*Walden* forecloses Harding's claim that their oral agreement was sufficient to subject Dr. Sasso to personal jurisdiction in Iowa. Dr. Sasso's sole connection with Iowa was initiated by Harding. Dr. Sasso's knowledge that Harding was an Iowa lawyer exploring the possibility of litigation in Iowa did not create sufficient minimum contacts. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) (quoting *Walden*, 571 U.S. at 825). Their agreement that Dr. Sasso could provide expert testimony in Iowa if Harding eventually filed suit did not create personal jurisdiction. *Id.* at 822 (finding possibility that agreement could lead to future business developments in Iowa was not relevant to jurisdictional analysis because agreement never led to a deal between the parties).

Stated differently, Dr. Sasso did nothing to purposely direct his activities toward residents of the forum state. His only involvement with Iowa was to review the medical records provided by Harding for a negotiated fee. Dr. Sasso did not purposely inject himself into Iowa for the purposes of doing business with Harding; he was solicited to provide expert services and did so. *See Twaddle v. Twaddle*, 582 N.W.2d 518, 521 (Iowa Ct. App. 1998) (citing *OmniLingua, Inc. v. Great Golf Resorts of World, Inc.*, 500 N.W.2d 721, 725 (Iowa Ct. App. 1993) (finding son

domiciled in Minnesota was not subject to personal jurisdiction in Iowa for nonpayment of loan from mother when son did not actively solicit the loan from his mother).

### B. Does Harding's suit result from or arise out of Dr. Sasso's contacts with Iowa?

We next consider the second prong of the minimum-contacts analysis: whether this litigation results from alleged injuries that "arise out of or relate to" the defendant's contacts with Iowa. "A single contact with the forum state can be sufficient to satisfy due process concerns when the plaintiff's claim arises out of the contact." *Shams*, 829 N.W.2d at 855.

Harding's lawsuit arises out of his contractual relationship with Dr. Sasso and the attorney's belief that Dr. Sasso took too long to review the medical records and did not account for his time. That entire records review occurred in Indiana. Thus, Harding's alleged injuries did not arise from the doctor's contacts with the forum state. *See Bankers Trust*, 452 N.W.2d at 415.

Given Dr. Sasso's dearth of contacts with Iowa, we conclude that requiring him to submit to jurisdiction in an Iowa court would offend due process.[6] The district court should have granted his motion to dismiss for lack of personal jurisdiction. We reverse and remand for that result.

**REVERSED AND REMANDED.**

---

[6] Having reached that conclusion, we need not determine whether the consideration of "fair play and substantial justice" would defeat the reasonableness of jurisdiction. *See Cap. Promotions*, 756 N.W.2d at 834 ("Once the plaintiff has established the required minimum contacts, the court must determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.").