Brian and Toni HAMMOND, George and Nadine Hess, Don and Donna Gerbeling, Individually and on Behalf of All Other Persons Similarly Situated, Appellants,

v.

FLORIDA ASSET FINANCING CORPORATION, Appellee,

and

Northeast National Bank, Northwest National Bank of Arlington, First Family Financial Services, and Calvary Investments, L.L.C. f/k/a Zirmack Investments, L.P., Defendants.

No. 03–2040.

Supreme Court of Iowa.

April 8, 2005.

Douglas H. Napier of Napier, Wolf & Napier, Fort Madison, for appellants.

Scott L. Long and Sean P. Moore of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, and Michael E. Schoeman of Schoeman, Updike & Kaufman, LLP, New York, NY, for appellee.

CARTER, Justice.

Plaintiffs, Brian Hammond, Toni Hammond, George Hess, Nadine Hess, Don Gerbeling, and Donna Gerbeling, who brought a proposed class action against defendant, Florida Asset Financing Corporation (FAF), and other financial institu-

tions,[1] appeal by permission from a ruling of the district court that it lacked personal jurisdiction over FAF. After reviewing the record and considering the arguments presented, we uphold the district court's ruling on personal jurisdiction. We modify the court's judgment, however, because it improperly dismissed the action with prejudice rather than ordering dismissal without prejudice.

The Hammonds are residents of Iowa. The Hesses are residents of Arkansas. The Gerbelings are residents of Nebraska. FAF is a Florida corporation with its principal place of business in that state. The claims advanced by plaintiffs grow out of the purchase of campground memberships from a company known as Thousand Adventures, Inc. (TAI). Those memberships purported to entitle the members to the use of campground facilities throughout the United States. Four of these campgrounds were located in Iowa.

The plaintiffs' memberships were purchased pursuant to an installment financing agreement that called for ten percent of the cost to be paid at the time of purchasing the memberships. The balance was to be paid in monthly installments over periods ranging from twelve to sixty months.[2] Plaintiffs allege that the retail installment contracts for TAI memberships were assigned to third parties, including the several defendants in this action.

With respect to FAF, the record indicates that its only interest in the TAI installment agreements was in the nature of a security interest in which some of the installment agreements served as collateral for loans FAF made to TAI. These loans, which at one time involved as much as $1,500,000, were fully repaid by TAI sometime in 1995.

The TAI installment contracts that served as collateral for FAF's loan were delivered to Travelers Data Services of Carlsbad, California, and Comerca Bank–Texas of Dallas, Texas, who served as escrow agents. The monthly payments due on these agreements were directed to the escrow agents and were deposited in a special account. The escrow agents then issued checks on that account to FAF to be applied on the unpaid balance of its loans to TAI.

The membership agreements at issue in the present action purport to be for the lifetime of the members and, depending on the amount paid, may be extended to younger generations of the buyers' families. Plaintiffs allege that TAI breached the membership agreements in several respects, including failing to provide the number of campgrounds promised, failing to properly service and maintain the campgrounds that were provided, failing to honor cancellation and refund provisions of the agreement, and failing to cooperate in the transfer of memberships. Plaintiffs ask for money damages including a disgorging of the funds collected from them for the memberships. They assert that the defendants named in the action, including FAF, are liable for such disgorgement

1. The other named defendants are Northeast National Bank, Northwest National Bank of Arlington, First Family Financial Services, and Calvary Investments, LLC. Because the ruling appealed from only affected one of the defendants, it was interlocutory. We granted permission to appeal in advance of final judgment.

2. The memberships were priced differently based on the number of generations of the member's family that were to enjoy lifetime benefit of the membership. The memberships purchased by the Hammonds and the Gerbelings cost $6990, while the membership purchased by the Hesses cost $3990. In addition to the cost of membership, monthly dues were charged to members.

pursuant to the provisions of the Federal Trade Commission Act and trade regulation rules promulgated pursuant thereto. In particular, plaintiffs rely on section 433.2 of subchapter D Trade Regulation Rules, 16 C.F.R. § 433.2 (1975) (preservation of consumers' claims and defenses), which makes it an unfair practice to fail to provide the following provision in a consumer sales agreement:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Notices that substantially comply with that provision were included in TAI's installment contracts. Plaintiffs have asked that the action they have commenced against the named defendants, including FAF, be maintained as a class action on behalf of all persons who have purchased campground membership from TAI and whose memberships were financed in whole or in part by executing a consumer retail installment contract.

FAF filed a motion to dismiss the claims brought against it by plaintiffs on the ground that the Iowa court lacked jurisdiction over its person. It supported that motion with an affidavit of the company president, asserting that the corporation had no presence in Iowa sufficient to render it subject to suit here. The affidavit further asserted that no aspect of the transactions between FAF and TAI concerning the installment contracts on which plaintiffs' claims are founded took place in Iowa. The district court found that the necessary minimum contacts for personal jurisdiction over FAF were lacking and sustained the motion to dismiss. Other facts that relate to the issues will be considered in our discussion of the legal claims that have been presented on the appeal.

## I. Scope of Review.

◼ In reviewing rulings on preanswer motions asserting jurisdictional infirmities, the trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record. *Meyers v. Kallestead,* 476 N.W.2d 65, 66 (Iowa 1991); *Percival v. Bankers Trust Co.,* 450 N.W.2d 860, 861 (Iowa 1990). We are not bound, however, by the trial court's application of legal principles in deciding the motion. *Meyers,* 476 N.W.2d at 66.

## II. Whether the District Court Correctly Found an Absence of Sufficient Contact to Confer Personal Jurisdiction Over FAF.

Plaintiffs urge that the district court improperly determined FAF's amenability to suit in Iowa by concentrating on plaintiffs' contacts with FAF rather than FAF's contacts with the forum state. FAF asserts that the district court considered the proper factors in its ruling. It points out that there are two distinguishable bases for personal jurisdiction: general amenability to suit because of a continuing presence in the state and specific amenability to suit because the claim being made is based on some act or omission of the defendant that produced consequences in the forum state. FAF argues that no basis exists for an Iowa court to assert either general or specific jurisdiction over its person.

■ Iowa Rule of Civil Procedure 1.306 provides in pertinent part:

Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state.

This rule expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution. *Hodges v. Hodges,* 572 N.W.2d 549, 552 (Iowa 1997).

■ In analyzing the due process principles relevant to this case, five factors should be considered:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Id.* (quoting *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980)). The third factor is of significant importance because it concerns the distinction drawn between "general" and "specific" jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984) (explaining that the distinction between "general" and "specific" jurisdiction is based on the nature of the contacts with the forum state). This understanding was further explained in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), wherein the United States Supreme Court stated:

[W]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41 (citations omitted); *see also State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.,* 456 N.W.2d 371, 377 (Iowa 1990) (following the principles espoused in *Burger King Corp.*); *Roquette Am., Inc. v. Gerber,* 651 N.W.2d 896, 900 (Iowa Ct.App.2002) ("Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir.1994))).

■ The district court's ruling that no general personal jurisdiction exists over FAF is not challenged on appeal. With respect to that court's rejection of specific personal jurisdiction over FAF based on acts in Iowa on which plaintiffs' claims are based, the district court found that there were no such acts by FAF. The evidence supports that finding. Although the installment contracts of the named plaintiffs may have been assigned to some of the defendants in the action, they were not assigned to FAF. That factual determination by the district court is clearly supported by substantial evidence in the record.

■ With respect to the Hammonds' contracts, all dealings between FAF and TAI had been concluded before the Hammonds' memberships were purchased. FAF took no assignments of or security interest in the Hammonds' installment contracts. With respect to the other named plaintiffs, the affidavit filed by FAF asserts that it did not take assignments or

security interests in their installment contracts. Neither the Hesses nor the Gerbelings offered any evidence to refute that. In sum, the district court was correct in concluding that, although the plaintiffs may have claims against the other defendants, they have no claims against FAF. There may be no specific jurisdiction over a nonresident defendant absent a claim arising from that defendant's activities in this state.

We recognize that, in the process of deciding the jurisdictional issue as to FAF, the district court also decided the merits of plaintiffs' claims against that defendant. That result appears to violate a principle that this court has previously adopted concerning contravening the merits of a plaintiff's claim in the adjudication of a challenge to the court's jurisdiction. We have stated this principle as follows:

> [There is a] difference, in special appearance proceedings, between allegations of a petition which go to the merits of a claim and other allegations of the petition. The latter may be contradicted in special appearance proceedings by affidavits, testimony, and other evidence; the former, however, are taken as true for special appearance purposes, and are not subject to contradiction at that stage.

*Martin v. Ju–Li Corp.*, 332 N.W.2d 871, 873 (Iowa 1983).

In the *Martin* case, we cited prior decisions of this court adhering to this view. We also referred to the ruling of a federal court that stated:

> Certainly the trial court may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist, and based upon the evidence so obtained, decide the jurisdictional dispute before trial. One deviation from this procedure is in the case where the issue of jurisdic-

tion is dependent upon a decision on the merits. In that circumstance, the trial court should determine jurisdiction by proceeding to a decision on the merits. *The purpose of postponing a determination upon a jurisdictional question when it is tied to the actual merits of the case is to prevent a summary decision on the merits without the ordinary incidents of a trial including the right to jury.*

*Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir.1965) (emphasis added) (citations omitted). Later federal court appellate decisions in the same circuit have relaxed the prohibition against contravention of allegations involving the merits of a claim in deciding jurisdictional disputes. These cases permit a party who challenges jurisdiction to show by affidavit or through other credible evidence that there is no genuine issue of material fact with respect to those facts that are being asserted to defeat jurisdiction, even if those facts also involve the merits of the claim. *See Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989); *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987). Another federal circuit has followed this course in *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285–86 (9th Cir.1977).

■■ The origin of the rule applied in *Martin* antedated the adoption of the summary judgment procedure now authorized by Iowa Rules of Civil Procedure 1.981 and 1.982. Because at that time there was no basis for a summary adjudication of the merits of a controversy, it seemed unacceptable to permit a summary adjudication of the merits to occur in the process of deciding jurisdictional challenges on affidavits. Given the current acceptance of summary judgments and partial summary judgments on a wide variety of issues, it seems unnecessarily inconsistent not to

permit allegations involving the merits of a claim to be controverted in attacking jurisdiction and to allow the jurisdictional challenges to succeed if there is no genuine issue of material fact as to the absence of jurisdiction. We continue to believe, however, that if genuine issues of material fact do exist concerning controverted allegations going to the merits of a claim, those issues should not be resolved by trial court findings of fact made in regard to a jurisdictional challenge, even if jurisdiction is dependent on those facts. Such issues should be reserved for determination by the trier of fact at trial.

In our review of the record in the present case, we are confident that there was no genuine issue of material fact with respect to the district court's conclusion that FAF took no assignments of or security interest in installment contracts entered into by any of the named plaintiffs in the litigation. We conclude that our prior reluctance to adjudicate issues going to the merits of a claim in the process of determining jurisdiction should not preclude a rejection of allegations going to the merits if there is no issue of material fact as to the basis for rejecting those allegations. That is the situation in the present case.

### III. *The Juridical Link Argument.*

Plaintiffs argue that all of the named plaintiffs and all of the unnamed class members purchased their memberships through TAI. Plaintiffs point out that TAI assigned the promissory notes to the various defendants that collected payments from all the class members on the assigned promissory notes. Therefore, plaintiffs contend that TAI provides a common juridical link to the defendants who were allegedly assigned installment contracts entered into by the class members. Consequently, plaintiffs urge, FAF is linked to Iowa through TAI.

In response, FAF asserts that the juridical-link doctrine is irrelevant in this matter because the doctrine has nothing to do with the issue of personal jurisdiction. FAF further maintains that the cases cited by plaintiffs do not address personal jurisdiction, and therefore, the juridical-link doctrine should not be considered in this matter.

Initially, it should be noted that Iowa case law has not addressed the juridical-link doctrine. The juridical-link doctrine was first introduced in dicta by the ninth circuit in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465–66 (9th Cir.1973). The doctrine was used to determine whether named plaintiffs in a class action were typical of the class and could fairly and adequately protect the class interests as required by Federal Rule of Civil Procedure 23. *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 170 (D.Mass.2004). "The crux of the doctrine held that 'a plaintiff who has no cause of action against the defendant can not [represent] those who do have such causes of action.'" *Id.* The ninth circuit suggested two exceptions to this rule:

> [O]ne for situations where the named plaintiff's injuries "are the result of a conspiracy or concerted schemes between the defendants," and another for situations where it would be "expeditious" to combine the defendants into one action because they are "juridically related."

*Id.* Historically, this doctrine has been used in connection with class-certification analysis pursuant to Federal Rule of Civil Procedure 23 and for determining standing under Article III of the United States Constitution. *Id.* It does not pertain to establishing personal jurisdiction over nonresident defendants because, as noted in our discussion in a prior division, personal jurisdiction must be determined as to each

defendant individually based on that defendant's contacts with the forum state.

### IV. Whether the Claims of All Potential Class Members May Be Considered For Establishing Personal Jurisdiction.

■ Plaintiffs argue that, even if the court lacks personal jurisdiction over FAF with respect to the claims of the named plaintiffs, the allegations of the petition are sufficient to assert jurisdiction over FAF on the claims of some of the members of the class. We are convinced that this argument should be rejected. We recognized in *Hammer v. Branstad*, 463 N.W.2d 86, 91 (Iowa 1990), that, when the named plaintiffs in a class action were shown to lack standing to maintain the litigation, opportunity should be given for other members of the class to step forward and take their place. At the time that determination was made in *Hammer*, however, there was a certified class of plaintiffs whose rights were at issue. At the present stage of the litigation we are now considering, there has been no determination that a class exists or that the action may proceed as a class action. The only persons who may assert that it should proceed as a class action are the named plaintiffs. If the court lacks jurisdiction over FAF as to plaintiffs' individual claims for relief, it also lacks jurisdiction over FAF for purposes of considering plaintiffs' request to certify the litigation as a class action. *See Williams v. FirstPlus Home Loan Trust*, 209 F.R.D. 404, 411 (W.D.Tenn.2002) (it is named class representatives whose claims must provide basis for personal jurisdiction over nonresident defendants); *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F.Supp. 65, 73 (D.R.I.1995) (same). All claims against FAF were properly dismissed for lack of personal jurisdiction.

### V. The District Court's Dismissal Order.

■ Finally, we consider plaintiffs' claim that the district court's judgment was incorrectly cast in the form of a dismissal with prejudice. We agree that this was wrong. Iowa Rule of Civil Procedure 1.946 provides:

All dismissals not governed by rule 1.943 *or not for want of jurisdiction* or improper venue, shall operate as adjudications on the merits unless they specify otherwise.

We have held that the converse of this pronouncement is also true, i.e., that dismissals for lack of jurisdiction are not adjudications on the merits. *Jorge Constr. Co. v. Weigel Excavating & Grading Co.*, 343 N.W.2d 439, 444 (Iowa 1984).

■ A dismissal with prejudice is a means of declaring that there has been an adjudication on the merits. Although the merits of plaintiffs' claims against FAF received a good deal of attention in the district court's ruling, and findings were made that would seem to dispose of those claims on the merits, the procedural posture in which the ruling was made only involved a challenge to jurisdiction. The district court's ruling should have reflected that fact and have provided for a dismissal without prejudice.

We modify the district court's judgment so as to provide that the dismissal of plaintiffs' claims against FAF is not an adjudication of the merits of their claims. In all other respects, that judgment is affirmed.

**AFFIRMED AS MODIFIED.**

All justices concur except STREIT, J., who takes no part.