# IN THE SUPREME COURT OF IOWA

No. 97 / 07–0508

Filed September 26, 2008

**CAPITAL PROMOTIONS, L.L.C.,**

Appellant,

vs.

**DON KING PRODUCTIONS, INC.,**

Appellee,

and

DON KING and BILLY BAXTER,

Defendants.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

Further review of court of appeals' decision affirming summary judgment for appellee based on lack of personal jurisdiction. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Kenneth R. Munro of Munro Law Office, P.C., Des Moines, and Joseph G. Bertogli, Des Moines, for appellant.

Mariclare Thinnes Culver of Duncan Green Brown & Langeness PC, Des Moines, and Gerald G. Saltarelli and James A. Morsch of Butler Rubin Saltarelli & Boyd LLP, Chicago, Illinois, for appellee.

**TERNUS, Chief Justice.**

The appellant, Capital Promotions, L.L.C., sued the appellee, Don King Productions, Inc., for intentional interference with Capital's contractual relationship with boxer Tye Fields. The district court granted King Productions' motion for summary judgment, ruling Iowa courts did not have personal jurisdiction over King Productions. The court of appeals affirmed the district court's dismissal of King Productions, and we granted Capital's application for further review. After reviewing the record and considering the applicable legal principles, we agree with the district court and the court of appeals that King Productions did not have sufficient contacts with this state to support personal jurisdiction in Iowa. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

### I. Background Facts and Prior Proceedings.

Capital Promotions, L.L.C. is an Iowa limited liability company with its principal place of business in Iowa. In 2000, it entered into a promotional rights agreement with boxer Tye Fields. Fields, whose hometown is Des Moines, Iowa, resided in Missouri when the contract was signed. By the time of the events giving rise to this lawsuit, he resided in Nevada. Billy Baxter became Fields' manager sometime in 2003. Baxter also resided in Nevada.

Under the promotional rights agreement between Capital and Fields, Capital had the exclusive right to promote Fields' professional boxing contests, including staging and selling tickets for such contests and all marketing and merchandizing rights. By its terms, this agreement was to be governed by the law of Iowa and was to terminate on February 4, 2005. During the term of the contract, Capital arranged

numerous fights for Fields. Several bouts were in Iowa, but the majority of Fields' fights were in other states.

Don King Productions, Inc. is a Delaware corporation with its principal place of business in Florida. Like Capital, King Productions is in the business of promoting boxing matches. King Productions has never promoted a fight in Iowa. It has never owned or rented property in Iowa, has never had a bank account in Iowa, has never had an employee located in Iowa, and has never had a registered agent in Iowa.

In January 2004, King Productions employee Eric Botcher called Capital's Des Moines office and spoke with Capital employee Bill McGee. Botcher told McGee that King Productions was interested in taking over the promotional rights for Fields. McGee advised Botcher that Capital was Fields' promoter and had no interest in relinquishing its rights.

A few months later, in the spring of 2004, Bobby Goodman, another King Productions employee, called Capital in Des Moines and spoke with Capital's president, Paul Scieszinski. The purpose of this call was to offer Fields an International Boxing Federation (IBF) world heavyweight title fight with a King Productions fighter, Chris Byrd, who was the reigning IBF heavyweight champion. One of the terms of the proposed fight was that, if Fields beat Byrd, King Productions would be allowed to assume Fields' promotional rights. Scieszinski turned down the offer and advised Goodman that Capital was not interested in relinquishing its promotional rights to Fields.

In the summer of 2004, Goodman called Capital to negotiate a fight between another King Productions fighter, Henry Akiwande, and Fields. This conversation was prompted by the fact Fields had won the United States Boxing Association (USBA) world heavyweight title in September 2003. After this win, in December 2003, the chair of the

IBF/USBA office had written to Scieszinski, with a copy to Goodman, stating Fields' mandatory defense of his title was due by September 2, 2004, and suggesting Akiwande was the leading available contender. The Akiwande/Fields bout was not scheduled, however, because Fields had suffered an injury in late spring 2004 and was unable to fight. There was no discussion of Capital's promotional rights in Fields during this phone conversation.

In the fall of 2004, Scieszinski spoke with Don King personally via telephone. Scieszinski informed King that Capital had a promotional rights contract with Fields and was not interested in sharing its rights with King or King Productions. Capital does not contend this call was initiated by King.

In January 2005, King Productions employee Botcher placed a telephone call to a Capital fighter, Josh Gutcher, who was in Iowa at the time. Botcher offered Gutcher a fight through King Productions and mentioned King Productions was involved in negotiations for a February 2005 fight with another Capital fighter, Tye Fields. Gutcher rejected the offer, telling Botcher he was a Capital fighter, as was Fields, and Botcher would have to speak to Scieszinski regarding any fights.

After Gutcher talked to Botcher, Gutcher called Scieszinski and told Scieszinski of the conversation. Scieszinski then called King Productions employee Goodman and informed Goodman that Capital was the exclusive promoter for Fields and Gutcher and that any attempts to offer either man a fight would be viewed as an interference with Capital's promotional rights agreements with those fighters.

In February 2005, Scieszinski arranged a fight between Fields and Vaughan Bean to take place on February 25, 2005, in Kansas City. The proposed fight was canceled, however, after King Productions and

Baxter, Fields' manager, arranged a February 5, 2005 boxing bout between Fields and Ray Luncsford in St. Louis. The record shows Baxter had approached Don King in Las Vegas, Nevada, with a request to put Fields on the undercard of the Spinks v. Judah II event being promoted by King Productions and scheduled to take place in St. Louis on February 5, 2005. King agreed to do so, and on February 3, 2005, in St. Louis, Missouri, Fields signed a bout agreement for the February 5 fight. In that agreement, he represented that he was not under contract with any other promoter. There is no evidence in the record showing that any communication regarding this bout agreement occurred in the state of Iowa.

On April 7, 2006, Capital filed this action against King Productions, Don King, and Baxter, alleging they intentionally interfered with its contractual relationship with Fields. Subsequently, King Productions filed a motion for summary judgment, asserting the Iowa district court lacked personal jurisdiction over it and that an exercise of jurisdiction by the Iowa court would violate due process. Capital resisted. After a hearing, the district court granted King Productions' motion for summary judgment.

Capital filed this appeal. As noted earlier, the court of appeals affirmed the district court's ruling. We then granted Capital's application for further review.

**II. Scope of Review.**

King Productions raised the issue of personal jurisdiction in a motion for summary judgment, rather than by a motion to dismiss. The parties submitted this issue to the district court and on appeal under the principles governing motions for summary judgment, including the rule that the facts are viewed in the light most favorable to the nonmoving

party, Capital. *See Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000).

Ordinarily, however, issues of personal jurisdiction are raised in a motion to dismiss, and the district court would make the necessary factual findings to determine whether the court had personal jurisdiction over the defendant. *See Bankers Trust Co. v. Fidata Trust Co. N.Y.*, 452 N.W.2d 411, 413 (Iowa 1990) (stating "the hearing and disposition of a motion involving personal jurisdiction is a special proceeding requiring [the district court] to find facts and draw conclusions of law in its decision"). *See generally Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1192–93 (Colo. 2005) (discussing trial court procedure for resolving issues of personal jurisdiction). Accordingly, those findings would be binding on appeal if supported by substantial evidence. *Hodges v. Hodges*, 572 N.W.2d 549, 551 (Iowa 1997); *Percival v. Bankers Trust Co.*, 450 N.W.2d 860, 861 (Iowa 1990).

Due to the manner in which the jurisdictional issue was raised in this case, the district court made no factual findings. Nonetheless, our review of the record reveals no genuine dispute with respect to the relevant facts. Therefore, we proceed to decide the legal issue: whether the undisputed facts allow personal jurisdiction over King Productions. We are not bound by the district court's application of legal principles in deciding whether personal jurisdiction is permissible. *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 4 (Iowa 2005).

**III. Discussion.**

**A. Governing Principles.** "The Due Process Clause of the Fourteenth Amendment to the federal constitution limits the power of the state to assert personal jurisdiction over a nonresident defendant to a lawsuit." *Ross v. First Sav. Bank,* 675 N.W.2d 812, 815 (Iowa 2004).

Iowa's jurisdictional rule provides: "Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state. . . ." Iowa R. Civ. P. 1.306. This rule authorizes the widest jurisdictional parameters allowed by the Due Process Clause. *Hammond*, 695 N.W.2d at 5.

Before a defendant can be made to defend a lawsuit in a foreign jurisdiction, his or her contacts with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 501 (1980). "The minimum contacts must show 'a sufficient connection between the defendant and the forum state so as to make it fair' and reasonable to require the defendant to come to the state and defend the action." *Ross*, 675 N.W.2d at 815 (quoting *Hodges*, 572 N.W.2d at 551).

A sufficient connection between the defendant and the forum state can exist as a general matter or merely with respect to the specific cause of action. These two grounds for personal jurisdiction are known as general jurisdiction and specific jurisdiction:

> "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," while "[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."

*Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (quoting *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). Capital contends Iowa courts have specific jurisdiction over King Productions for purposes of its intentional-interference-with-contractual-relationship claim.

Many of our cases rely on a five-factor test for the exercise of specific jurisdiction, including the quantity of the defendant's contacts with the forum state, the nature and quality of those contacts, the source of those contacts and their connection to the cause of action, the interest of the forum state, and the convenience of the parties. *See, e.g., Hammond*, 695 N.W.2d at 5; *Cascade Lumber Co. v. Edward Rose Bldg. Co.,* 596 N.W.2d 90, 92 (Iowa 1999); *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980). It appears the five-factor test first appeared in Iowa in *Douglas Machine & Engineering Co. v. Hyflow Blanking Press Corp.*, 229 N.W.2d 784 (Iowa 1975), and was borrowed from the Eighth Circuit Court of Appeals. *See Douglas Mach.,* 229 N.W.2d at 789 (stating "the Eighth Circuit gleaned from the above cases five factors to be considered in determining whether 'fair play and substantial justice' requirements are satisfied" (citing *Aftanase v. Econ. Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965))). In *Aftanase*, the Eighth Circuit culled these factors from five United States Supreme Court cases decided between 1945 and 1958. 343 F.2d at 195–96. Obviously, the parameters of specific jurisdiction have continued to evolve since 1958. Although these five factors retain their relevancy, they no longer provide a useful analytical framework for determining personal jurisdiction under current case law.

More recently, in discussing the contact that will subject a defendant to the jurisdiction of a state's courts, the United States Supreme Court has stated two requirements that must be shown by the plaintiff:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [due process] is satisfied if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528, 540–41 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 79 L. Ed. 2d 790, 797 (1984) (first quoted material); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404, 411 (1984) (second quoted material)); *accord Archangel Diamond Corp.*, 123 P.3d at 1194; *see also Hammond*, 695 N.W.2d at 6 (stating "[t]here may be no specific jurisdiction over a nonresident defendant absent a claim arising from that defendant's activities in this state").

Once the plaintiff has established the required minimum contacts, the court must "determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476, 105 S. Ct. at 2184, 85 L. Ed. 2d at 543 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 160, 90 L. Ed. 95, 104 (1945)). In making this determination, a court may consider

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at 477, 105 S. Ct. at 2184, 85 L. Ed. 2d at 543 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S. Ct. at 564, 62 L. Ed. 2d at 498). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* On the other hand, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at

a 'severe disadvantage' in comparison to his opponent." *Id.* at 478, 105 S. Ct. at 2185, 85 L. Ed. 2d at 544 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S. Ct. 1907, 1917, 32 L. Ed. 2d 513, 525 (1972) (first quoted material); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223, 226 (1957) (second quoted material)).

**B. Sufficiency of King Productions' Contacts with Iowa.** In determining whether King Productions had sufficient minimum contacts with Iowa to justify the exercise of personal jurisdiction by the Iowa courts, we look for any purposeful conduct by King Productions directed to Iowa. King Productions initiated four contacts with Iowa: (1) the January 2004 phone call from Botcher to McGee in which Botcher indicated King Productions' interest in Fields' promotional rights; (2) the spring 2004 phone call from Goodman to Scieszinski in which Goodman offered Capital a fight for Fields with the condition that, if Fields won, King Productions would assume Fields' promotional rights; (3) the summer 2004 phone call from Goodman to Scieszinski in which Goodman attempted to negotiate a fight between Fields and King Productions fighter Akiwande; and (4) the January 2005 phone call from Botcher to Capital fighter Gutcher in which Botcher offered Gutcher a fight through King Productions.[1] There was no discussion of Fields' promotional rights in the summer 2004 Goodman/Scieszinski phone conversation, so it has no connection to Capital's cause of action. The remaining three contacts relate to Capital's cause of action insofar as they could be used as evidence to establish King Productions' knowledge

---

[1]We do not consider the two phone calls to King Productions initiated by the plaintiff, as only the defendant's purposeful forum-state contacts matter. *Archangel Diamond Corp.*, 123 P.3d at 1194; *Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*, 237 S.W.3d 762, 772 (Tex. Ct. App. 2007).

that Capital held the promotional rights to Fields at the time of those phone calls. These calls did not, however, constitute the interference of which Capital complains in this lawsuit. Consequently, although these calls have some relevancy to Capital's cause of action, we cannot say that Capital's injuries arose out of or are related to those contacts so as to support specific jurisdiction over King Productions. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 267–68 (3d Cir. 1998) ("a few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum"); *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th Cir. 1995) (holding, in case claiming breach of contract and intentional interference with contractual relationships, defendant's fax to plaintiff in forum state soliciting business relationship was too remote to establish specific jurisdiction because it occurred three years before final phase of negotiations leading to contract).

Capital contends that, even if King Productions' telephone contacts with the state of Iowa are not sufficient alone to support personal jurisdiction, those contacts combined with the injuries sustained by Capital in Iowa do support Iowa's exercise of personal jurisdiction over King Productions. Capital relies on the United States Supreme Court's opinion in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). In *Calder*, Shirley Jones brought suit in California against the *National Enquirer*, its distributor, its editor, and a *National Enquirer* reporter who wrote an allegedly libelous article concerning the plaintiff. 465 U.S. at 784–86, 104 S. Ct. at 1484–85, 79 L. Ed. 2d at 809–10. The editor and reporter, who were residents of Florida and who had worked on the article in Florida, challenged the California court's exercise of personal jurisdiction over them. *Id.* at 785–86, 104 S. Ct. at 1485, 79 L. Ed. 2d at 809–10. The editor had been in California only twice, both

times for purposes unrelated to the article. *Id.* at 786, 104 S. Ct. at 1485, 79 L. Ed. 2d at 810. The reporter traveled to California frequently, but the only contacts related to this article were phone calls to sources in California for the information contained in the article and to the plaintiff's husband seeking comment on the article. *Id.* at 785–86, 104 S. Ct. at 1485, 79 L. Ed. 2d at 809–10.

In determining the individual defendants had sufficient minimum contacts with California to support personal jurisdiction over them, the Court relied on the following facts:

> Here, the plaintiff is the focus of the activities of the defendants out of which the suit arises.
>
> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788–89, 104 S. Ct. at 1486, 79 L. Ed. 2d at 811–12. The court concluded jurisdiction over the defendants was "proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789, 104 S. Ct. at 1486–87, 79 L. Ed. 2d at 812 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 297–98, 100 S. Ct. at 567–68, 62 L. Ed 2d at 501–02).

*Calder* did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis." *IMO Indus., Inc.*, 155 F.3d at 265; *accord Griffis v. Luban*, 646 N.W.2d 527, 535 (Minn. 2002). The *Calder* "effects" test, as it has come to be known, "is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts within the forum." *Revell v. Lidov*, 317

F.3d 467, 473 (5th Cir. 2002). Accordingly, a majority of courts have interpreted *Calder* to require "more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum." *IMO Indus., Inc.*, 155 F.3d at 265; *accord Revell*, 317 F.3d at 473 (stating "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*"); *Far W. Capital, Inc.*, 46 F.3d at 1079 (stating "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights [and] allegedly injured a forum resident does not necessarily establish . . . the constitutionally required minimum contacts"); *Percival v. Bankers Trust Co.*, 494 N.W.2d 658, 659–60 (Iowa 1993) (stating minimum-contacts requirement is "not satisfied from a mere 'effect' felt by a plaintiff within his or her state of residence"); *Griffis*, 646 N.W.2d at 533 ("[C]ourts have consistently refused to find jurisdiction based on *Calder* merely because the plaintiff was located in the forum state and therefore felt the effects of the alleged intentional tortious conduct there."). As one court has noted, basing jurisdiction solely on the fact the plaintiff felt harm in the forum jurisdiction would make jurisdiction "depend on a *plaintiff*'s decision about where to establish residence," rather than "grounding jurisdiction on a defendant's decision to 'purposely avail[] itself of the privilege of conducting activities within the forum [s]tate,' or on a defendant's activities 'expressly aimed' at the forum state." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625–26 (4th Cir. 1997) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958) (first quoted material); *Calder*, 465 U.S. at 789, 104 S. Ct. at 1487, 79 L. Ed. 2d at 812 (second quoted material)).

Thus, even under the *Calder* effects test, "a court must undertake a particularized inquiry as to the extent to which the defendant has

purposefully availed itself of the benefits of the forum's laws." *Far W. Capital, Inc.*, 46 F.3d at 1079. A defendant will be found to have met this standard if the plaintiff shows

> (1) the defendant's acts were intentional; (2) these actions were uniquely or expressly aimed at the forum state; and (3) the brunt of the harm was suffered in the forum state, and the defendant knew the harm was likely to be suffered there.

*Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 900 (Iowa Ct. App. 2002); *accord IMO Indus., Inc.*, 155 F.3d at 265–66; *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998); *Principal Fin. Servs., Inc. v. Big Fin. & Ins. Servs., Inc.*, 451 F. Supp. 2d 1046, 1060 (S.D. Iowa 2006).

Although the present case alleges an intentional tort and the plaintiff claims to have suffered economic harm in Iowa, we do not think the plaintiff has established that King Productions expressly aimed its *tortious activities* at Iowa. The defendant is alleged to have interfered with a contract between an Iowa company, Capital, and a Missouri resident, Fields. But the acts alleged to constitute the interference were directed toward Fields, who was by then a resident of Nevada, and Baxter, his Nevada manager. These allegedly tortious acts took place in Nevada and Missouri and were centered on a fight to take place in Missouri. Thus, Iowa was not the focal point of the alleged tort. *See ESAB, Inc.*, 126 F.3d at 625 (stating the defendant's actions "must be directed at the forum state in more than a random, fortuitous, or attenuated way"); *Wolk v. Teledyne Indus., Inc.*, 475 F. Supp. 2d 491, 506 (E.D. Pa. 2007) (finding no personal jurisdiction when nonresident defendants "did not aim their conduct at [the forum state and the forum state] was not the focal point of the alleged tortious interference with prospective contracts"); *see also Percival*, 494 N.W.2d at 659–60 (stating "[t]he minimum contacts requirements demand conduct having to do

with the state itself"). Capital's location in Iowa was unrelated to King Productions' allegedly tortious conduct, and consequently, Iowa played a fortuitous role in the alleged interference with Capital's contractual rights. *See Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*, 237 S.W.3d 762, 775–76 (Tex. Ct. App. 2007) (holding no specific jurisdiction when defendant's acts of tortious interference occurred outside forum state and forum state was not the focal point of those acts).

The present case is distinguishable from a similar case decided by the Third Circuit Court of Appeals, in which the court found specific jurisdiction of a nonresident defendant in a suit alleging intentional interference with a contract. *See Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001). The plaintiff in *Remick* was a Pennsylvania attorney who sued his former client, Angel Manfredy, who was a professional boxer, and Manfredy's Illinois agent. *Id.* at 252. The plaintiff had contracted with Manfredy to represent Manfredy "in the procurement and negotiation of high profile and lucrative fights." *Id.* at 252–53. Manfredy later terminated the contract, claiming the plaintiff had not delivered on his contractual promises. *Id.* at 253. In the subsequent lawsuit, the plaintiff claimed Manfredy's agent, the defendant, had intentionally interfered with the plaintiff's ability to perform his contractual obligations to Manfredy, causing Manfredy to terminate the contract. *Id.* at 260. The exact nature of the interference was not clear, although it included the dissemination of defamatory information regarding the plaintiff's skills and ability. *Id.* The court of appeals concluded the defendant's alleged tortious conduct was expressly aimed at the plaintiff in Pennsylvania, noting the majority of the plaintiff's services under the contract were rendered out of his Philadelphia office. *Id.* The court

distinguished its prior decision in *IMO Industries, Inc.*, noting the object of the interference in that case was not the resident plaintiff, but the other party to the contract, a French company. *Id.*

The case before us is also distinguishable from the *Remick* case. In *Remick*, the contractual interference was conduct by the defendant that made it difficult for the resident plaintiff to render his services in the forum state. In comparison, the nature of the alleged interference here is the negotiation and scheduling of a Missouri fight for Fields, activity that did not involve or focus on Capital or Iowa. Consequently, we cannot say, as did the court of appeals in *Remick*, that the defendant expressly aimed his tortious activity at the forum state. *See also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (holding no jurisdiction over out-of-state defendant alleged to have intentionally interfered with Iowa plaintiff's prospective business advantage and contractual relations by sending allegedly defamatory correspondence to the plaintiff's customers, noting none of the correspondence was published in Iowa and it did not appear that the defendant's actions "were targeted to have an effect in Iowa"); *Keystone Publishers Serv., Inc. v. Ross*, 747 F.2d 1233, 1234 (8th Cir. 1984) (holding defendants did not have sufficient minimum contacts with Iowa when their alleged interference with the resident plaintiff's contractual relations occurred outside Iowa, notwithstanding that the defendants' actions caused injury in Iowa); *Drayton Enters., L.L.C. v. Dunker*, 142 F. Supp. 2d 1177, 1183–85 (D.N.D. 2001) (holding Oklahoma defendant's alleged out-of-state interference with plaintiff's confidentiality contract with former employee did not support personal jurisdiction over defendant in North Dakota, even though contract was entered into in North Dakota and injury was sustained in North Dakota); *cf. Noonan*, 135 F.3d at 91 (holding no

specific jurisdiction over nonresident defendant who was alleged to have misappropriated plaintiff's image when defendant's intentional acts were not directed toward forum state).

## IV. Conclusion.

Viewing the record made below most favorably to the plaintiff, we conclude the defendant did not have the required minimum contacts with Iowa to support personal jurisdiction over the defendant in this state. The district court did not err in granting King Productions' motion for summary judgment, dismissing it from this lawsuit.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Appel and Baker, JJ., who take no part.